SCOTT FURNITURE COMPANY *v.* MAURER.

4-7631                                              187 S. W. 2d 185

Opinion delivered April 30, 1945.

*Oscar Barnett,* for appellant.

*John L. Hughes,* for appellee.

SMITH, J. Appellant, Scott Furniture Company, sold appellee, under a written contract dated August 27, 1943, a 1940 used Stewart-Warner refrigerator, for $225, plus a sales tax of $4.50, making a total of $229.50. There was a cash payment of $10 and a credit of $20 for repairs paid by appellee, leaving a net balance due of $199.50.

The contract provided that the title should remain in the company until the purchase price was fully paid; that appellee should not remove the refrigerator from his premises, nor sell it, without the written consent of the company; and that the company should have the right to take possession of the refrigerator without process of law, if default in payment were made, in which event any and all payments made should be treated as rent and liquidated damages, and that the company should not be liable for the refund of any payments made.

Payments totaling $90 were made, including the $20 payment for repairs, when appellee discovered that the ceiling price of the refrigerator as fixed by the Office of Price Administration, commonly referred to as the OPA, was $70.50 (there being no written guarantee, in which event an amount of $5 might have been added), and he declined to make further payment, whereupon the company brought suit in replevin before a justice of the peace to recover the possession of the refrigerator under its reservation of title. From the judgment rendered by the justice of the peace in favor of the company, an appeal was prosecuted to the circuit court, where, upon trial before the court, sitting as a jury, judgment was rendered in favor of appellee, and from the judgment the company has appealed.

There was offered in evidence the price list of used mechanical refrigerators, fixing the price thereof as of

March 24, 1943, which date was prior to appellee's purchase of the refrigerator here in question.

The prices were fixed by the OPA under the authority of the Federal Emergency Price Control Act of January 30, 1942, 56 Stat. 23, 50 U.S.C.A., Supp. II, §§ 901 et seq., as amended by the stabilization act of October 2, 1942; 56 Stat. 765, 50 U.S.C.A., Supp. II, §§ 961 et seq., and the rules and regulations made pursuant thereto.

The constitutionality of this legislation was upheld by the Supreme Court of the United States, in the case of *Yakus* v. *United States,* 321 U. S. 414, 64 S. Ct. 660, 88 L. Ed. 834, and the act, with its amendments, has since been construed and applied in numerous cases cited in the annotations of this act found in 146 A. L. R. 718; 148 A. L. R. 1429; 149 A. L. R. 1472; 150 A. L. R. 1470; 151 A. L. R. 1469; 152 A. L. R. 1472; 154 A. L. R. 1468.

There is no question here about the company's liability for the penalties provided by the legislation for its violation, as these are not asked; the sole question presented for our decision being the right of the company to recover the refrigerator. The testimony shows that the company and appellee were both ignorant of these regulations when the refrigerator was sold, and the record does not present the question whether the right to rescind the contract on account of this mutual mistake existed, and we refrain from deciding whether that right did exist.

The manager of the company was asked, "Did you offer to give him the money back?" and he answered, "I tell you what I did, I said to him, we will follow the OPA and I will offer you the box at $5 per month rent and I will refund any more over the price you have paid, and I will keep the refrigerator." This statement is ambiguous and we are not certain what it means. Apparently the company proposed to charge rent at $5 per month, and to return any excess above that amount and keep the refrigerator. The sales contract does provide that any payments made (and the record does not show when, or in what amount they were made) shall be treated as rent,

or liquidated damages in case of default in payments, but in no event can it be said that the company proposed a rescission of the contract, upon the ground of mutual mistake. Appellee has already paid more than the ceiling price, and cannot be required to make additional payments.

The provisions of § 11388, Pope's Digest, are as follows:

*"Defense in replevin of mortgaged chattel.* In any action in a justice court, or circuit court of this state, where it is attempted to foreclose any mortgage, deed of trust or to replevy, under such mortgage, deed of trust or other instrument, any personal property, the defendant or defendants in said action shall have the right to prove or show any payment or payments or set-off under such said mortgage, deed of trust or other instrument, and judgment shall be rendered for the property or the balance due thereon, and the defendant may pay the judgment for the balance due and costs within ten days and satisfy the judgment and retain the property."

It is insisted on behalf of the company that the provisions of this section are not applicable here for the reason that there has never been a sale of the refrigerator. But there was a sale, with a reservation of the title until the purchase money was fully paid, and we have held that the statute just quoted applies in such cases. *Howell* v. *Thew Shovel Company,* 184 Ark. 777, 43 S. W. 2d 366; *Harper* v. *Futrell,* 204 Ark. 822, 164 S. W. 2d 995, 143 A. L. R. 235.

A case very similar to the instant case is that of *El Paso Furn. Co.* v. *Gardner,* 182 S. W. 2d 818, in which case, on account of the mutual mistakes of the parties, rescission of a sale was prayed, but this relief was denied, it being there held that the vendor, having collected the maximum price under the law, was entitled to no relief. A headnote in that case reads as follows:

"Where furniture company sold for $250 a refrigerator alleged to be a 1941 model when company knew or could have known that refrigerator was a 1937 model

carrying maximum ceiling price of $91.50, and buyer paid the maximum price, company was entitled to no relief under Emergency Price Control Act. Emergency Price Control Act of 1942, §§ 4, 205 (e), 50 U.S.C.A. Appendix §§ 904, 925 (e)."

Under the regulations of the OPA, appellee has already paid more than the company had the right to charge; and as there is now no debt due, replevin will not lie and the judgment must be affirmed, and it is so ordered.