[Civ. No. 16274. Second Dist., Div. One. July 9, 1948.]

C. R. PEARSON, Respondent, v. HERB HILL et al., Appellants.

Milton B. Safier and S. W. Spizer for Appellants.

Hazlett & Plummer and John N. Hurtt for Respondent.

WHITE, J.—Defendants have appealed from a judgment against them after trial before the court without a jury in an action to quiet title to certain trucks and trailers and for declaratory relief.

Defendant Hill operated a trucking business in Los Angeles. In May, 1946, he advertised in a newspaper substantially as follows: "Bobtails plus five year contract permanent, better than wages. Hill Transportation, 8022 Beach Street." In response to the advertisement plaintiff visited defendant Hill's place of business and purchased two trucks or "tractors" and two trailers. The transaction was evidenced by a contract which, so far as here material, provides as follows:

"WHEREAS, First Party (defendant Hill) is the owner and operator of that certain transportation business known as 'Hill Transportation'; and

"WHEREAS, the parties hereto have agreed upon the sale of certain equipment by First Party to Second Party (plaintiff) and the hauling and transportation of freight and merchandise by Second Party for First Party upon the terms and conditions hereinafter set forth;

"Now, THEREFORE, in consideration of the mutual promises and covenants herein contained, the parties hereby agree as follows:

"1. First Party hereby agrees to sell to Second Party and Second Party agrees to buy from First Party one (1) 1935 International Tractor, bearing Engine No. FAB 16886; one (1) 1934 GMC trailer, bearing Serial No. BB1164; one (1) 1940 Ford 8 Tractor, bearing Engine No. 99T-226631, and one (1) 1936 Spencer trailer, bearing Serial No. X61586.

"2. *First Party hereby agrees to furnish freight and other merchandise to be hauled and transported by Second Party for a term of five (5) years from date hereof.* Second Party

shall pay all expenses, costs of repairs, maintenance, and public liability and property damage insurance on said equipment.

"3. It is agreed that First Party shall retain Twenty per cent (20%) of the gross proceeds of such hauling and transportation and to pay the Board of Equalization and California Railroad Commission taxes and to keep full, correct and proper books of accounts of the transactions of the parties.

"4. That as consideration for the foregoing, Second Party hereby agrees to pay to First Party the sum of Six Thousand six hundred thirty-nine and 95/100 Dollars ($6,639.95) in the following manner: Two thousand and no/100 Dollars ($2,000.00) upon the execution of this agreement, the receipt whereof is hereby acknowledged, and the balance of Four thousand six hundred thirty-nine and 95/100 Dollars ($4,639.95) payable at the rate of Three hundred nine and 33/100 dollars ($309.33) per month on the 1st day of each calendar month commencing July 1, 1946. All of the foregoing payments shall be made to Walt Kidd Finance Co., 570 N. Lake Avenue, Pasadena 4, California.

"5. *In the event that Second Party shall default in any payment as herein provided, the entire unpaid balance shall become immediately due and payable at the option of First Party and First Party may immediately retake possession of the trucks and trailers without securing an order of court and all of the rights of the Second Party in and to said trucks and trailers shall be terminated and all payments made shall be retained by First Party as and for the use of said equipment.*

"6. *Either party hereto may terminate this agreement to haul freight and merchandise upon giving Six (6) months notice in writing to the other party."*

The Office of Price Administration ceiling price for the four pieces of equipment thus purchased was $2,585.64. After entering into the agreement plaintiff paid two installments of $309.33 each to the Walt Kidd Finance Company, making a total payment under the contract of $2,618.66. He made no further installment payments, but in September, 1946, commenced the instant action, seeking in his first cause of action to quiet title to the vehicles. In the second cause of action he set forth the making of the contract, the enactment of the Emergency Price Control Act of 1942 [56 Stats. 23, 50 U.S.C.A. Appx. §§ 901 et seq.], and the issuance of Maximum Price Regulation No. 341. He further alleged that he had paid more than the ceiling price for the vehicles; that as a condition for

the sale the defendant required plaintiff to agree to the hauling agreement (par. 2 of the contract above set forth); that defendants knew there was no scarcity in demand for hauling and no bona fide need for the hauling agreement; that when the contract was executed defendants knew of the ceiling prices on the equipment and that plaintiff did not know; and that a controversy existed between the parties.

The trial court found that the Walt Kidd Finance Company was the lending agent of defendant Hill; that concurrently with the execution of the contract above set forth plaintiff paid to defendant Hill $2,000, and thereafter paid to Walt Kidd Finance Company $618.66, and that such payments were made pursuant to the contract; that under Maximum Price Regulation No. 341 (8 Fed. Reg. 11176) the ceiling price of the equipment purchased was $2,585.64; that defendant Hill committed a violation of section 11 of Maximum Price Regulation No. 341, in charging plaintiff a price in excess of $2,585.64; that defendant Hill required plaintiff to finance the purchase through a particular lending agency, to wit, defendant Walt Kidd operating as Walt Kidd Finance Company, which was prohibited by Maximum Price Regulation No. 341. The court further found that it was not true that defendant Hill required plaintiff to purchase any services so as to increase the total payments above the ceiling price or required plaintiff to purchase any other commodity or service in connection with the purchase of the equipment; but that in connection with the transaction defendant Hill intended to charge in excess of the ceiling price established under the regulation and knew or should have known of the provisions of such regulation, and intended to violate the same. As conclusions of law, the court found that plaintiff was the owner of the vehicles in question; that defendants had no interest therein; and that plaintiff was under no further obligation to defendants. Judgment was entered accordingly.

Appellants rely for reversal upon the following points: (1) that the evidence is insufficient to sustain the judgment and the court erred in denying a nonsuit; (2) that the judgment and findings are contrary to the facts and contrary to law. It is urged that there was no violation of the Maximum Price Regulation for the reason that the parties did not primarily enter into an agreement for the sale of equipment, but into "a business contract for the sale of trucks and trailers along with a 5-year contract for the furnishing of mate-

rial for hauling and shipping.''; that the contract is not severable—the agreement for the sale and the agreement for the furnishing of material to be hauled are interdependent, and ''it cannot be said that so much of the consideration was for the one and so much for the other; the entire contract was but one deal.'' In order to sustain the judgment, argue appellants, the trial court would have to find that the entire consideration was in payment solely for the equipment and none for the furnishing of freight to be hauled. ''And in fact, the court does so find. . . . The evidence, in fact, is to the effect that the consideration of $6,639.95 was for the entire contract, including both the equipment and the agreement to furnish materials for hauling.'' Additional facts relied upon by appellants are that defendant Hill was not in the used truck business, but in the business of hauling and shipping; that there is no evidence that plaintiff desired to buy the equipment independently of the hauling contract or had any use for the trucks other than in connection with the hauling business to be provided by defendant Hill, or that Hill would sell equipment independently of a hauling contract. Appellants draw the analogy of a person who buys a going business consisting of a building, equipment, accounts, good will and delivery trucks for a lump sum, and assert that in such case the purchaser could not quiet title to the trucks merely because he had paid that portion of the consideration which represented the ceiling price of the trucks.

We cannot uphold appellants' contentions that the evidence is insufficient or that the judgment is against law. We must hold that there is substantial evidence to support the finding that defendant Hill intended to and did charge plaintiff prices for the trucks and trailers in excess of those prescribed by the Maximum Price Regulation. The testimony of the parties throws no particular light on the transaction, but the contract in evidence discloses on its face an attempted evasion of the price control regulations.

Appellants, as heretofore noted, make much of the fact that the contract is not ''severable'' and that it is impossible to separate the consideration agreed to be paid for the equipment from that agreed to be paid for the hauling agreement. The very fact that the contract is so framed is a telling point against appellants' position that no violation occurred or was intended.

The wording of the agreement leaves no doubt that the additional consideration, that is, the hauling agreement, mov-

ing from defendant Hill to plaintiff was largely illusory. The agreement "to furnish freight and other merchandise" prescribes no minimum amount of freight to be furnished, nor the type thereof, nor where it is to be carried, nor the rates to be paid. It does not bind Hill to furnish any minimum tonnage or sufficient freight to keep plaintiff's trucks working to capacity. It is so uncertain as to be wholly unenforceable. Moreover, plaintiff was not bound by the agreement to accept such freight as might be furnished. The agreement to furnish freight could be cancelled on six months' notice. In other words, plaintiff agreed to pay approximately $3,400 over and above the ceiling price of the equipment in return for an agreement to furnish an unspecified and unascertainable amount of hauling business for a period of time which could be as short as six months.

Furthermore, under the contract, the equipment purchased by plaintiff was to stand as security for the payment of the entire $6,000, and this even though the seller should exercise his option to terminate the hauling agreements long before the payments were completed.

The trial court was warranted in finding that the transaction here in question was in violation of the Emergency Price Control Act [56 Stats. 23, 50 U.S.C.A. Appx. §§ 901 et seq.], as a prohibited evasion. (See *United States* v. *Armour & Co. of Delaware*, 50 F.Supp. 347; *Brown, Admnr.* v. *Banana Distributors of Conn.*, 52 F.Supp. 804; *Walker* v. *Bailey*, 33 Ala.App. 284 [33 So.2d 891].) This finding being supported, the fact that the further finding, that Hill required plaintiff to finance through a particular lending agency in violation of the act, was assertedly outside the issues raised by the pleadings, becomes immaterial.

The foregoing covers all points raised on this appeal.

The attempted appeal from the order denying the motion for a new trial is dismissed. The judgment is affirmed.

York, P. J., and Doran, J., concurred.