275 F.2d 574
 Maxine P. BROMBERG, Administratrix of Estate of Jack L.
Berg, Deceased, Plaintiff-Respondent,
v.
Arthur F. MOUL, residing at 66 Clarendon Place, Buffalo 9,
New York, Defendant-Appellant.
 No. 92, Docket 25704.
 United States Court of Appeals Second Circuit.
 Argued Jan. 4, 1960.
Decided March 7, 1960.
 
 William L. Rieth, Buffalo, N.Y. (Finck & Huber, Buffalo, N.Y., on the brief), for plaintiff-respondent.
 Robert P. Leacy, Buffalo, N.Y. (Montesano, Garvey & Magner, Buffalo, N.Y., on the brief), for defendant-appellant.
 Before LUMBARD, Chief Judge, and MOORE and FRIENDLY, Circuit Judges.
 LUMBARD, Chief Judge.
 
 
 1
 This is a diversity action for the price of two used machine tools and the expenses incurred by the plaintiff in their repair, shipment, and storage, based on an alleged contract between the parties. On or about December 28, 1951, the defendant is alleged to have agreed to purchase one 'Diamond grinder' and two 'Bridgeport grinders' for $12,500, but it is claimed that he paid for, and accepted delivery of, only the 'Diamond grinder.' Plaintiff stated in a pre-trial deposition that separate prices had been established for each tool: $4,250 for the 'Diamond grinder,' $4,250 for one 'Bridgeport grinder,' and $4,000 for the other 'Bridgeport grinder.' The defendant admitted paying for and accepting the 'Diamond grinder,' but denied any liability for the other two tools. The defendant apparently made a $2,000 down payment, $1,000 of which was applied by the plaintiff to the price of the 'Diamond grinder.' The defendant later paid the remaining amount due for this tool. He counterclaimed for the remaining $1,000 of the down payment. The case was tried by Judge Knight without a jury in March, 1955, and soon after he died without having made any findings or decision.[1] Thereafter, on motion of the plaintiff, Judge Morgan, acting solely on the basis of the trial record, awarded summary judgment to plaintiff. The trial record was apparently considered by Judge Morgan as 'supporting affidavits,' as that term is used in Rule 56(a), Federal Rules of Civil Procedure,[2] and this procedure was entirely appropriate.
 
 
 2
 The grant of summary judgment was proper only if there was 'no genuine issue as to any material fact.' Rule 56(c), Federal Rules of Civil Procedure. The defendant contends that several 'issues of material fact' are involved, that the grant of summary judgment was therefore erroneous, and that a new trial is required. We agree. In our view the ages of the two 'Bridgeport grinders' are 'issues of material fact' because if they were manufactured in the year that the defendant claimed, the prices established in the alleged contract violated a regulation of the Office of Price Stabilization. Such a violation in the circumstances presented by this case is, we hold, a valid defense to the enforcement of the contract.
 
 
 3
 As one of its affirmative defenses, the defendant contended that the price terms of the alleged contract violated the Regulations of the Office of Price Stabilization, issued pursuant to the Defense Production Act of 1950, as amended, 50 U.S.C.A.Appendix, 2101-2166. Section 2105(a) of the Act made it unlawful for any person to buy or sell any 'material' in violation of any regulation issued persuant to the Act. And 12 of Ceiling Price Regulation 80, 16 F.R. 10256, October 9, 1951, in force when the alleged contract was made, prohibited the buying or selling of a used machine tool at a price higher than that established by the regulation. A used machine tool was to be priced according to age as determined by its serial number. If a tool had no serial number, it was deemed to have been manufactured before January 1, 1916, unless the seller could 'furnish definite physical proof of the age of the used machine tool.' A tool manufactured before January 1, 1916, and sold 'as is' could not be priced at more than 15% Of the manufacturer's list price for 'the most comparable new machine' as of January 25, 1951.
 
 
 4
 The defendant alleged that the used machine tools in question have no serial numbers, and that they therefore must be deemed to have been manufactured prior to 1916. If this is true, and if the machines were sold 'as is,' as the plaintiff claimed, then the selling prices established in the alleged contract exceeded the authorized ceiling. The ages of the machines are plain issues of fact. But they are only 'material' under Rule 56(c), Federal Rules of Civil Procedure, if a violation of OPS regulations is a defense to the enforcement of this contract. We hold that such a violation is a valid defense at least where, as in this case, the court is asked to enforce the very promises in which the violation inhered.
 
 
 5
 There appears to be no federal case which squarely decides whether a violation of OPS price ceilings is a defense in a contract action. Danebo Lumber Co. v. Koutsky-Brennen-Vana Co., 9 Cir., 182 F.2d 489, and its companion case Furrow v. Koutsky-Brennen-Vana Co., 9 Cir., 182 F.2d 496, certiorari denied 1950, 340 U.S. 830, 71 S.Ct. 67, 95 L.Ed. 610, do seem to recognize the defense. In these cases, the court held that 'sham contracts' which were fully executed by the buyer and whose purpose was to avoid the regulations of the Emergency Price Control Act of 1942 were transactions malum in se in which the buyer was in pari delicto with the seller, and therefore that the buyer could not recover payments made thereunder to the seller. There is distum favorable to the defendant's position in Norwood Lumber Corp. v. McKean, 3 Cir., 1946, 153 F.2d 753. The question was specifically left open in Arkansas Fuel Oil Co. v. Kirkmyer, 4 Cir., 1947, 158 F.2d 821. However, the courts of at least seven states have considered the question, and they have uniformly determined that the defense of price violation is a valid one.[3] Several commentators who have considered the problem also favor this view. Brown & Rubin, The Effect of Wartime Price Controls on Contracts for the Sale of Goods, 52 Yale L.J. 74, 87-92 (1942); Sleigh, Violation of O.P.A. Regulations as Defense in Contract Actions, 28 B.U.L.Rev. 23 (1948).
 
 
 6
 Courts should not permit themselves to be made the instrument for the carrying out of an illegal contract, e.g., McMullen v. Hoffman, 1899,174 U.S. 639, 669-670, 19 S.Ct. 839, 43 L.Ed. 1117; Rutkin v. Reinfeld, 2 Cir., 229 F.2d 248, certiorari denied Kaplow v. Reinfeld, 1956, 352 U.S. 844, 77 S.Ct. 50, 1 L.Ed.2d 60. We think it settled that a seller cannot recover the sale price when judgment in his favor 'would itself be enforcing the precise conduct made unlawful * * *' Kelly v. Kosuga, 1959, 358 U.S. 516, 520, 79 S.Ct. 429, 432, 3 L.Ed.2d 475. For a court to render a judgment for damages for breach of a contract which violated an OPS price regulation would be enforcing just such conduct. The purpose of Title IV of the Defense Production Act was to further national defense by the establishment of price ceilings. 50 U.S.C.A.Appendix, 2102, 2103. This purpose would be plainly frustrated if plaintiff were permitted to recover on a contract which violated an established ceiling. There is no danger here that the defendant will be 'getting other people's property for nothing.' Kelly v. Kosuga, supra, 358 U.S. at pages 520-521, 79 S.Ct. at page 432, quoting from Continental Wall Paper Co. v. Louis Voight & Sons Co., 212 U.S. 227, 271, 29 S.Ct. 280, 53 L.Ed. 486 (Holmes, J. dissenting). This case does not present the paradox of Bruce's Juices v. American Can Co., 1947, 330 U.S. 743, 753, 67 S.Ct. 1015, 1021, 91 L.Ed. 1219, where in an action by a seller who had completely performed his part of a contract, a defense of illegality based on the Robinson-Patman Act was denied in part because 'had (the defendant's) delinquency been greater, so would its gain.' Furthermore, unlike Bruce's Juices, we need not look to 'transactions which a party to the litigation had with third persons who are not parties' to prove illegality. Id., 330 U.S. at pages 755-756, 67 S.Ct. at page 1021.
 
 
 7
 The plaintiff urges that the defense is invalid since all wage and price controls issued pursuant to the Act have been suspended. However, Section 2156(b) provides that 'the termination of * * * any rule, regulation, or order issued thereunder, shall not operate to defeat any suit, action, or prosecution, whether theretofore or thereafter commenced, with respect to any right, liability, or offense incurred or committed prior to the termination date of such title or of such rule, regulation, or order.' See United States v. Hark, 1944, 320 U.S. 531, 64 S.Ct. 359, 88 L.Ed. 290. The very Executive Order, No. 10434, February 6, 1953, 18 Fed.Reg. 809, U.S.Code Congressional and Administrative News 1953, p. 994, which suspended the controls contained similar language. See also 1 U.S.C. 109. While these general saving clauses do not specifically include a defense to an action, it is plain that these omissions were not intended to void an otherwise valid defense.
 
 
 8
 Other issues of fact may exist. The defendant alleged, and the plaintiff denied, that 'the purported sale was contingent upon reconditioning of said machines' and 'upon inspection and acceptance of said machines by the defendant or his agent * * *' It may be necessary for the trial judge to determine the genuineness of the documents introduced to prove these conflicting claims. These issues, and any others that may arise, are open for decision upon the new trial.
 
 
 9
 Reversed and remanded.
 
 
 
 [1]
 The plaintiff claims that Judge Knight did 'render a decision.' Since no evidence of the decision was presented, we must disregard this claim. The plaintiff's extended arguments that Rule 63, Federal Rules of Civil Procedure, 28 U.S.C.A., applies are without merit. That rule provides: 'If by reason of death, sickness, or other disability, a judge before whom an action has been tried is unable to perform the duties to be performed by the court under these rules after a verdict is returned or findings of fact and conclusions of law are filed, then any other judge regularly sitting in or assigned to the court in which the action was tried may perform those duties; * * *' It is plain that this rule is inapplicable since no findings of fact and conclusions of law were filed. These are required 'in all actions tried upon the facts without a jury' by Rule 52, Federal Rules of Civil Procedure
 
 
 [2]
 '(a) For Claimant. A party seeking to recover upon a claim, counterclaim, or cross-claim or to obtain a declaratory judgment may, at any time after the expiration of 20 days from the commencement of the action or after service of a motion for summary judgment by the adverse party, move with or without supporting affidavits for a summary judgment in his favor upon all or any part thereof.'
 
 
 [3]
 Alabama: Walker v. Bailey, 1947, 33 Ala.App. 284, 33 So.2d 891; Arkansas: Gale & Co. v. Wallace, 1946, 210 Ark. 161, 194 S.W.2d 881; Illinois: Palmer v. Mayer, 1947, 330 Ill.App. 619, 71 N.E.2d 822; New York: International Spangles Corp. v. Marrow Mfg. Corp., 1945, 294 N.Y. 295, 62 N.E.2d 77; Pennsylvania: Dippel v. Brunozzi, 1950, 365 Pa. 264, 74 A.2d 112; Texas: Morgan Ice Co. v. Barfield, Tex.Civ.App.1945, 190 S.W.2d 847; Wisconsin: Perma-Stone Corp. v. Merkel, 1949, 255 Wis. 565, 39 N.W.2d 730. No contrary cases have been found