Herbert E. Tharp and Virginia Tharp v. Commissioner.
Tharp v. Commissioner
Docket No. 4607-69.
United States Tax Court
T.C. Memo 1972-10; 1972 Tax Ct. Memo LEXIS 244; 31 T.C.M. (CCH) 22; T.C.M. (RIA) 72010; January 12, 1972, Filed F. S. Gettle, 1st Nat'l Life Bldg., Houston, Tex., for the petitioners. Daniel A. Taylor, Jr., for the respondent. FAY
Memorandum Findings of Fact and Opinion FAY, Judge: The respondent determined deficiencies in the petitioners' income taxes for the years 1965 and 1966 in the amounts of $2,186 and $2,576.73, respectively. Concessions having been made, the only issue *246 remaining for decision is whether the petitioners are entitled to deduct losses incurred in the money lending business as either bad debt losses under section 166[1] or losses incurred in a trade or business under section 165(c)(1). Findings of Fact Some of the facts have been stipulated. The stipulation of facts and the exhibits attached thereto are incorporated herein by this reference. The petitioners, Herbert E. and Virginia Tharp, are husband and wife, and at the time of filing the petition herein they were residents of Houston, Texas. Their joint Federal income tax returns for the calendar years 1965 and 1966 were filed with the district director of internal revenue at Austin, Texas. Herbert E. Tharp will sometimes hereinafter be referred to as the petitioner. During the years here involved and in prior years the petitioner was engaged in the business of making loans of money to customers. He was engaged in such business for over 30 years. The larger part of his business income was the result of interest received from the lending of money. In addition to other business *247 activities he operated two loan businesses in Birmingham, Alabama, as a sole proprietor - one under the name of Post Loan and Luggage Co. (hereinafter referred to as Post) and another named Eagle Brokers (hereinafter referred to as Eagle). His Post and Eagle operations were successful and many regular customers repeatedly borrowed money from Post and Eagle. All but a small part of the loans made were repaid in the ordinary course of business. During the years here involved, and in prior years, Post and Eagle followed a system of accounting whereby accrued but uncollected interest on loans made during the calendar year would at the close of the calendar year be reported as gross receipts on petitioners' income tax return for the calendar year. Post and Eagle were licensed under the Alabama Pawn Shop Act for the years 1965 and 1966 but neither was licensed under the Alabama Small Loan Act. Businesses making loans under the Pawn Shop Act were required by Alabama State law to receive sufficient collateral from borrowers. [2] If this Pawn Shop Act requirement was met the business was held to *248 be exempt from the Alabama Small Loan Act. [3]
Post and Eagle made individual loans of under $300 each and did not demand sufficient collateral. Consequently, they did not qualify for the Pawn Shop Act exemption and were therefore subject to the requirements of the Alabama Small Loan Act. The Alabama Small Loan Act specifies that one engaged in the business of lending money in amounts of $300 or less must be licensed. One so engaged and not licensed under the provisions thereof may charge interest no greater than that permitted by law. [4]
Title 9, Code of Alabama, Section 60, provides that the legal interest rate is 8 percent per annum by written contract and 6 percent per annum if not by written contract. The petitioner on the vast majority of loans was charging an interest rate of 50 percent per month and was clearly in 23 violation of the Act. Such a violation *249 incurs the following penalty: Any contract of Joan in the making or collection of which any act shall be done which violates this section shall be void and the lender shall have no right to collect, receive or retain any principal, interest, or charges whatsoever Pursuant to the penalty provision, on July 28, 1966, the State of Alabama, Ex Rel. Lehman J. Lewis, as supervisor of the Bureau of Loans of the State Banking Department, filed a Bill of Complaint in a civil action against certain named and unnamed individuals and an unnamed corporation. The respondents in that complaint filed their answers alleging that Tharp was the true owner of Post and Eagle. Thereupon, the State of Alabama added Tharp as a respondent. In the final decree entered August 2, 1966, agreed to by all the respondents, including the petitioner herein, the respondents were permanently enjoined from collecting any of the outstanding principal and interest on loans made in violation of the Alabama Small Loan Act. The petitioner did not know which of the loans made by Post and Eagle were lawful under the Alabama statutes governing loans by licensed pawnbrokers. After entry of the State court judgment the *250 petitioner went to Birmingham with the intention of applying for a small loan license and continuing the Eagle and Post businesses. Petitioner discovered his employees had closed the businesses. He subsequently decided not to continue the businesses for he was unable to hire competent employees. Furthermore, the City of Birmingham alleged that he owed approximately $3,600 in back taxes with respect to Eagle and Post for the past five years. The petitioner left Birmingham and never reopended either of his businesses. In closing his books for the taxable year 1965 the petitioner determined that his uncollectible loans as of the end of said year attributable to the Post and Eagle operations amounted to $3,060.50, which the petitioners deducted as bad debts on their 1965 income tax return. In closing his books for the taxable year 1966 the petitioner determined that his uncollectible loans as of the end of the year attributable to Post and Eagle amounted to $14,400.55, which the petitioners deducted as bad debts on their 1966 income tax return. The amounts deducted on the petitioners' 1965 and 1966 income tax returns as bad debts of Post and Eagle include both principal and interest. *251 In their returns for the taxable years 1965 and 1966 the petitioners deducted the amounts of $3,060.50 and $14,400.55, respectively. The respondent in his notice of deficiency increased the petitioners' taxable income to reflect the disallowance of these deductions. Opinion The issue presented is whether the petitioners are entitled to deduct losses incurred in the money lending business as either bad debt losses under section 166 or losses incurred in a trade or business under section 165(c)(1). In Lawrence A. Wagner, 30 B.T.A. 1099 (1934), a case involving very similar facts, the taxpayer was denied any type of loss deduction on the theory that costs arising out of the unlawful operation of business in contravention of State statute were not deductible on the grounds of public policy. At the outset of the present case the respondent conceded that the amounts in question are not to be disallowed on public policy grounds. See Commissioner v. Sullivan, 356 U.S. 27 (1958). [5]
*252 The respondent instead comes forward with the following dual-headed argument: (1) The uncollected loans receivable are not deductible as bad debts under section 166 because only a bona fide debt qualifies for purposes of section 166. (2) The uncollected loans receivable are still categorized as debts and as such must be deducted under section 166 or not at all. 24 Section 166 allows a deduction for any debt which becomes worthless within the taxable year. Section 165, on the other hand, allows as a deduction any loss sustained during the taxable year and not compensated for by insurance or otherwise. For our purposes, in the case of individuals the deduction under section 165 is limited to losses incurred in a trade or business, or incurred in a transaction entered into for profit. It has long been settled law that losses and bad debts are mutually exclusive, and that a bad debt loss is deductible according to the rules of section 166 or not at all. This point was settled as early as *253 1934 when the Supreme Court held in Spring City Co. v. Commissioner, 292 U.S. 182 (1934) that a single transaction could not qualify as a bad debt and a loss. The Court construed the predecessors to sections 165 and 166 in the following manner: The making of the specific provision as to debt indicates that these were to be considered as a special class and that losses on debts were not to be regarded as falling under [section 165]. What was excluded under [section 166] cannot be regarded as allowed under [section 165]. See also Samuel Towers, 24 T.C. 199 (1955), affd. 247 F. 2d 233 (C.A. 2, 1957), certiorari denied 355 U.S. 914 (1958); Putman v. Commissioner, 352 U.S. 82 (1956); and Bert W. Martin, 52 T.C. 140 (1969), affd. per curiam 424 F. 2d 1368 (C.A. 9, 1970), certiorari denied 400 U.S. 902 (1970). The respondent is correct in contending that if these apparent obligations were "debts" for purposes of section 166 and were not deductible under section 166, the petitioner is precluded from any remedy under section 165. However, *254 "If there is no 'debt', the section, by its terms, does not apply" (see Judge Featherston's concurrence in Bert W. Martin, supra at 147) and we are then free to examine the applicability of section 165. Obviously the operative word in the case at hand is "debt" as it is used within the context of sections 165 and 166. To determine the "debt" status of the original obligations we must resort to State law. State law determines whether or not a debt was created. See William Park, 38 B.T.A. 1118, 1120 (1938), affd. 113 F. 2d 352 (C.A. 3, 1940); and Santa Anita Consolidated, Inc., 50 T.C. 536, 560 at fn. 13 (1968). The Alabama Small Loan Act, Title 5, Code of Ala., sec. 279(d), provides that the loans in question were "void and the lender shall have no right to collect, receive, or retain any principal, interest, or charges whatsoever." Under Alabama State law A void thing is no thing. It has no legal effect whatsoever, and no rights whatever can be obtained under it or grow out of it. *255 In law it is the same thing as if the void thing had never existed. In Bankers & Shippers Ins. Co. of N. Y. v. Blackwell, 255 Ala. 360, 51 So. 2d 498 (1951), the petitioner was denied recovery on an insurance policy covering goods handled by the petitioner in his capacity as a common carrier. He was hauling cargo in interstate commerce without having secured a required permit or certificate of convenience from the Interstate Commerce Commission. Such hauling was therefore illegal and the plaintiff's insurable interest was dependent upon an illegal transaction. The court in holding that an illegal contract conferred on plaintiff no right on which to base his claim of an insurable interest stated at page 501: But an act under the police power, designed to regulate the business, to protect the public against fraud and imposition, requiring a license as evidence of qualification and fitness, and prohibiting any act of business under penalty, unless such license is first obtained, does render such contracts illegal, void and unenforceable in actions for the recovery of compensation *256 and the like. See also Walker v. Bailey, 33 Ala. App. 284, 33 So. 2d 891, 896 (1947), wherein it was held: Contracts specially prohibited by law, the enforcement of which violates the laws enacted for regulation and protection of private citizens are void and non-enforceable in the courts of this state. There is no question in our mind that the Small Loan Act was enacted for regulation and protection of private citizens. The legislative intent as expressed in Title 5, Code of Alabama, section 277, shows clearly that one of the major purposes of this act was to protect the public against fraud and imposition. 25 Sec. 277. Declaration of legislative intent. - The legislature finds as facts and determines that: * * * 4. Interest charges are often disguised by the use of subterfuges to evade the usury law. These subterfuges are so complicated and technical that the usual borrower of small sums is defenseless even if he is aware of the usurious nature of the transaction and of his legal rights. 5. As a result, borrowers of small sums are being exploited, to the injury of the borrower, his dependents, and the general public. Charges are generally exorbitant *257 in relation to those necessary to the conduct of a legitimate small loan business; trickery and fraud are common; and oppressive collection practices are prevalent. 6. These evils characterize and distinguish loans of three hundred dollars ($300) or less. Legislation to control this class of loans is necessary to protect the public welfare. 7. It is the intent of the legislature in enacting this law to bring under public supervision those engaged in the business of making such loans, to eliminate practices that facilitate abuse of borrowers, to establish a system of regulation for the purpose of insuring honest and efficient small loan service and of stimulating competitive reductions in charges, to allow lenders who meet the conditions of this article a rate of charge sufficiently high to permit a business profit, and to provide the administrative machinery necessary for efficient enforcement. Clearly under Alabama State law the petitioner had no enforceable rights to collect loans made in his lending business. In light of this fact we must determine whether such an unenforceable obligation can be categorized as a "debt" for purposes of section 166. In Federal Fuel Co., 3 B.T.A. 814, 816 (1926), *258 a case in which it was held that a loss did not qualify as a bad debt loss, we held that "If the debtor was not legally liable to the taxpayer, then there was no debt to become worthless." As early as 1930 the Board of Tax Appeals stated that the word "debt" as used in the statutory provisions of bad debts was to be taken in its usual and accepted meaning. The Board went on to define "debt" as a "specific sum of money, which is due and owing from one person to another, and denotes not only the obligation of the debtor to pay, but the right of the creditor to receive and enforce payment." [Emphasis added.] J. S. Cullinan, 19 B.T.A. 930, 932 (1930); see also Allen v. Dickson, 1 Minor 119, 120 (1823), Sup. Ct. of Ala., to the effect that "a debt is a legal liability to pay a specific sum of money." From the foregoing authorities we think it is clear that the loans in question were unenforceable at all times and that a debt for purposes of section 166 was never created *259 in favor of the petitioner. The petitioner is not entitled to a bad debt deduction under section 166. [6]
*260 For purposes of section 166 a "debt" never arose, consequently we are not bound by the doctrine of exclusivity as stated in Spring City Co., supra. The petitioner is not limited only to section 166 to remedy his loss and we may look to the applicability of section 165. An ordinary loss deduction is appropriate under sections 165(a) and 166(c)(1). [7] Tharp was in a bona fide trade or business. He had been engaged in this same business for over 30 years. While engaged in the business of lending money the petitioner incurred losses directly resulting from such 26 business. While it is true the petitioner was in the "usurious loan" business he nevertheless was in the loan business. There is nothing in section 165 requiring the taxpayer to be engaged in a "legal" business to qualify for the statutory deduction. That the respondent has conceded this much is shown by his abandonment of any arguments based on public policy. Tharp earned a significant amount of taxable income from this business and he paid the requisite taxes on this income. The losses incurred in earning *261 such income are properly deductible. To deny a deduction in this case would come close to making this business taxable on the basis of gross receipts, while all other businesses would be taxable on the basis of net income. Seee Commissioner v. Sullivan, supra.
Decision will be entered for the petitioners. *
Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954.↩
2. Title 9, Code of Alabama, sec. 14. ↩
3. Title 5, Code of Alabama, sec 279(b).↩
4. Title 5, Code of Alabama, sec. 279(a).↩
5. We are concerned here with public policy and its relation to sec. 165. While Commissioner v. Sullivan, 356 U.S. 27 (1958) and recent Congressional action have been in relation to sec. 162, the respondent's concession on this issue extends the rationale of these authorities to the case at bar. Congress recently amended sec. 162 to provide that certain punitive damages were not deductible; it also included in the statute the rulings that certain other payments were not deductible because they were contrary to public policy. Sec. 902, Tax Reform Act of 1969. At that time the report of the Senate Finance Committee included the statement that: The provision for the denial of the deduction for payments in these situations which are deemed to violate public policy is intended to be all inclusive. Public policy, in other circumstances, generally is not sufficiently clearly defined to justify the disallowance of deductions. * * *↩
6. In accepting the respondent's argument that there is no deduction under sec. 166 we reaffirm our decision in William K. Harriman, T.C. Memo. 1967-190. In that case, which also involved usurious loans that became worthless, this Court denied a bad debt deduction on the grounds that there was no enforceable obligation to pay and therefore the petitioner never was the possessor of a "bona fide debt." In denying the deduction we relied on the Commissioner's Treasury Regulation 1.166-1(c): § 1.166-1 Bad Debts. (c) Bona fide debt required. Only a bona fide debt qualifies for purposes of section 166. A bona fide debt is a debt which arises from a debtor-creditor relationship based upon a valid and enforceable obligation to pay a fixed or determinable sum of money. A gift or contribution to capital shall not be considered a debt for purposes of section 166. The fact that a bad debt is not due at the time of deduction shall not of itself prevent its allowance under section 166. * * * However, the case at bar is distinguishable from Harriman, supra↩, in that Harriman was never engaged in the trade or business of lending money. Harriman made one series of advances to one individual who then invested the amounts in theatre tickets which he hoped to sell at inflated prices.
7. SEC. 165. LOSSES
(a) General Rule. - There Shall be allowed as a deduction any loss sustained during the taxable year and not compensated for by insurance or otherwise. * * * (c) Limitation on Losses of Individuals. - In the case of an individual, the deduction under subsection (a) shall be limited to - (1) losses incurred in a trade or business; * * * ↩
*. By official Tax Court Order, dated 2/14/72 and signed by Judge Fay↩, these words were changed from "Decision will be entered under Rule 50." - CCH.