## MASON v. DIERKS LUMBER & COAL COMPANY.

## Opinion delivered February 14, 1910.

1.  HOMESTEAD—CONVEYANCE—NECESSITY OF WIFE'S JOINDER.—A husband's conveyance of his homestead in this State, in which his wife did not join, is void under the act of March 18, 1887, though she was living in another State. (Page 110.)

2.  SAME—ESTOPPEL.—A wife who did not join in her husband's conveyance of his homestead will not be estopped by his representation that he was single. (Page 110.)

3.  ESTOPPEL—PERSONS BOUND.—With respect to the persons who are bound by or who may claim the benefit of an estoppel, it operates between the immediate parties and their privies, whether by blood, by estate or by contract. (Page 110.)

4.  HOMESTEAD—ESTOPPEL BY REPRESENTATIONS.—Where the owner of a homestead conveyed it on the representation that he was single, the grantee, as against the heirs of the grantor, acquired title by estoppel, though the grantor was in fact married. (Page 110.)

Appeal from Howard Chancery Court; *James D. Shaver,* Chancellor; reversed in part.

### STATEMENT BY THE COURT.

This is an action by Mrs. Z. F. Mason, wife of the late George E. Mason, and the heirs at law of the said George E. Mason, to set aside a deed which George E. Mason executed to the appellee, the Dierks Lumber & Coal Company, to the land in controversy, upon the ground that said land at the time of the execution of said deed was the homestead of the said George E. Mason, and his wife did not join him in the execution of said deed.

There was a prayer also to have appellant enjoined from cutting and removing the timber growing on the land until said action could be heard.

The answer sets up three defenses to the complaint, as follows:

1. Mrs. Mason was not the wife of George E. Mason at the time of the conveyance.

2. She was living apart from her husband at the execution of said deed.

3. That George E. Mason at the time of the execution of said deed represented to appellee that he was a single or

unmarried man, and for that reason his said wife and heirs at law are estopped from asserting any claim or title to said land.

The evidence shows that Mrs. Z. F. Mason was married to George E. Mason in Chambers County, Alabama, November 5, 1863. She testified that they lived together as man and wife until his death. She gives the names of six children born to them. Her husband left her to go to Arkansas about September, 1897, and he lived in Arkansas about five years, then he returned and lived with her in Alabama until his death. There was no cause of separation, and he never obtained any divorce. He went to Howard County, Arkansas, and homesteaded about 160 acres of land. He wrote her from Arkansas that he had homesteaded the land. He told her that he had sold the land. She never signed or acknowledged any deed to the land."

The witness Mrs. Sarah Gammill, daughter of George E. Mason, testified as follows:

"He homesteaded that land from the government. He resided on the land at the time he homesteaded it. He lived with me at that time. The tract of land was his homestead. At that time he was living on the land as his homestead. He lived on it five years after he homesteaded it. During that time he would come down and stay with me two or three months at a time, and then would go back. He lived on the land by himself part of the time, and part of the time Mrs. Chandler was living with him. She lived with him maybe a year. My father lived in the neighborhood of this land during all the time he was in Arkansas, except when he was staying with me."

Another witness testified that he knew the land that Mason homesteaded; it was his homestead.

The testimony on behalf of appellee showed that on February 13, 1903, it purchased the land in controversy from George E. Mason, paying him therefor the sum of $320. Mason was living at the time at the home of his daughter, Mrs. Gammill. Mason represented at the time of the purchase that he was a single man. Mrs. Gammill was there at the time of the trading, and heard Mr. Mason represent himself as being a single man.

The deed was exhibited, and was a warranty deed from George E. Mason to appellee to the land in controversy. The consideration named being $320. It was not signed by Mrs. Mason.

In rebuttal, Mrs. Gammill testified that she did not hear her father represent to the agent of appellee before the sale of the land that he was an unmarried man.

*W. D. Lee* and *W. P. Feazel,* for appellants.

The deed was void. It was a homestead, and the wife. did not join in the execution nor acknowledge it. 57 Ark. 242; 64 *Id.* 492; 71 *Id.* 283; 55 Minn. 244; 56 N. W. 817; 87 Am. St. 704; 71 Vt. 193. The subsequent abandonment of a homestead does not impart vitality to a deed void by virtue of the fact that one of the spouses only signed it. 57 Ark. 242.

2. The fact that husband and wife are living apart does not obviate the necessity of the wife's joining in and acknowledging the deed. 65 Ark. 251; Rodgers on Dom. Rel., § 173; 22 Neb. 370; 23 Kans. 393; 69 Am. St. 593; 29 Ark. 280.

3. Appellants are not estopped. 65 Ala. 431; 115 *Id.* 561; 49 Am. St. 303; 36 S. W. 910; 44 Minn. 482; 47 N. W. 53; 80 *Id.* 937; 27 Am. St. 71.

*John S. Kirkpatrick,* for appellee; *Sain & Sain,* of counsel.

1. The land was not a homestead. Waples on Homest. & Ex., 189, § 7; 59 Tex. 321; 54 *Id.* 571.

2. If it was, appellants are estopped. 2 Pom. Eq. Jur., § 813, 821; 2 S. W. 865; 7 Hurl. & N. 477; 50 Mo. 278; 41 L. R. A. 637; 16 Cyc. 718; 42 Ala. 389; 13 Ark. 214-220; 35 *Id.* 365; 98 N. W. 821; 72 Pac. 769; 33 Ark. 465; 64 Ark. 628; Waples on H. & Ex. 302, § 8.

WOOD, J., (after stating the facts). The uncontroverted evidence establishes the following facts: That Mason entered the land in controversy as his homestead, acquired title to it under the homstead laws, that he impressed it with the character of a homestead by residing on it as his home, that it was his homestead at the time it was sold, and that his wife, Mrs. Z. F. Mason, did not join him in the execution of the deed; that before the deed was executed Mason represented that he was an unmarried man to the agent who negotiated the sale for appellee, and who asked Mason before the deed was made whether or not he was a married man, with the view of ascertaining the fact.

The testimony is in conflict as to whether Mrs. Gammill at the time of the sale or before heard her father represent himself as a single man. The finding of the chancellor as to this fact against Mrs. Gammill would not be clearly against the weight of the evidence. Inasmuch as Mrs. Mason did not join in the execution of the deed, the same was void, and appellee acquired no rights by that conveyance. Act March 18, 1887; *Pipkin* v. *Williams,* 57 Ark. 242; *Bluff City Lumber Co.* v. *Bloom,* 64 Ark. 492; *Park* v. *Park,* 71 Ark. 283. The fact that at the time of the sale Mason was living in Arkansas and his wife in Alabama makes no difference. See *Duffy* v. *Harris,* 65 Ark. 251. So far as Mrs. Mason is concerned, any representations made by her husband could not estop her, for she was not his privy in estate or blood. *Gober* v. *Smith,* 36 S. W. 910. But as to the heirs of Mason the case is different. They are his privies. Mason could have abandoned the land as his homestead, although he could not have alienated it without his wife's joining in the deed. *Farmers' Building & Loan Association* v. *Jones,* 68 Ark. 76.

Mason did something more than merely accept the purchase money and sign the deed. He made a positive representation as to his status that he knew was untrue, and that was intended to and did mislead appellee to its damage, should the deed be cancelled. Because of such false representation, he could not maintain the suit, and neither can his privies in blood and estate. *Schwarz* v. *National Bank of Texas,* 2 S. W. 865. See on estoppel: *State Bank* v. *Robinson,* 13 Ark. 214, 220; *Jowers* v. *Phelps,* 33 Ark. 465; *Conner* v. *Abbott,* 35 Ark. 365; *Rogers* v. *Galloway Female College,* 64 Ark. 628, and other authorities cited in appellee's brief.

With respect to the persons who are bound by or who may claim the benefit of the estoppel, it operates between the immediate parties and their privies, whether by blood, by estate or by contract. Pom. Eq. Jur., § 813.

"The most striking instance of the estoppel recognized by courts of equity is that * * * wherein by intentional misrepresentation, misleading conduct, or wrongful concealment, a party may preclude himself from asserting his legal title to land, or from enforcing an incumbrance on, or maintaining an

interest in, real estate. This doctrine was established in equity long before the modern rules concerning equitable estoppel by conduct had been developed; and its operation is somewhat more extensive than the effects produced by the ordinary forms of estoppel. A person may not only be prevented from asserting his title or interest, he may even be compelled at the suit of an innocent purchaser, to make good and specifically perform his representations." Pom. Eq. Jur., § 821.

The decree as to Mrs. Mason is reversed, and the cause as to her will be remanded with directions to enter a decree in her favor for possession of the land in controversy. As to the heirs, the decree is affirmed.