ELMS v. HALL.

4-8671                                            215 S. W. 2d 1021

Opinion delivered December 20, 1948.

Rehearing denied January 17, 1949.

*C. A. Holland,* for appellant.

*Ben B. Williamson,* for appellee.

MINOR W. MILLWEE, Justice. On June 10, 1946, appellant, Cecil Elms, purchased a 1945 model motor truck from appellee, E. A. Hall, making a cash payment of $1,250 on the purchase price of $2,000. On the same date Cecil Elms and his sister, appellant Hazel Elms, executed their joint promissory note to appellee due one year from date for $750, the balance of the purchase price of the truck. They also executed a mortgage on a tract of Cleburne county land, which they owned jointly, to secure payment of the $750 note.

At the time of the execution of the note and mortgage, Cecil Elms was married to, but separated from, the appellant, Claudine Elms, and she did not join in the execution of the mortgage. On May 11, 1947, Cecil Elms obtained a divorce from his wife, Claudine, on the ground of desertion and was awarded custody of their two minor children. This decree recites that Claudine Elms executed a waiver and entry of appearance in the divorce suit and that there were no property rights to adjust between the parties.

On August 25, 1947, appellee instituted this suit to foreclose the mortgage alleging that no payments had

been made on the note; and that although appellant, Claudine Elms, did not join in the execution of the mortgage, she had subsequently abandoned and forfeited all dower and homestead rights she might have had in the lands at the time the mortgage was executed.

Appellants filed an answer and cross complaint in which they set up the contentions now urged for reversal of the decree against Cecil Elms and Hazel Elms on the note and ordered foreclosure of the mortgage.

The first contention for reversal of the decree is that the land mortgaged to appellee by Cecil Elms and his sister, Hazel Elms, was the homestead of Cecil Elms and his wife, Claudine, and since the latter did not join in the execution of the mortgage, it was rendered void under § 7181 of Pope's Digest. This section provides that no mortgage affecting the homestead of any married man shall be of any validity except for taxes, laborers' and mechanics' liens, and the purchase money, unless his wife joins in the execution of such instrument and acknowledges same. Appellants cite several cases where the statute has been invoked, but none of the cases involve a situation where the marital status of homestead claimants has been dissolved by divorce.

The land mortgaged to appellee by Cecil Elms and his sister, Hazel, was conveyed to them jointly in 1945. Arkansas follows the rule supported by the weight of authority that a tenant in common or joint tenant may acquire a homestead in the undivided premises. *Robson* v. *Hough,* 56 Ark. 621, 20 S. W. 523; *Stull* v. *Graham,* 60 Ark. 461, 31 S. W. 46; *Gannon* v. *Moore,* 83 Ark. 196, 104 S. W. 139; 40 C. J. S., Homesteads, § 88; 26 Am. Jur., Homestead, § 62; Anno. 89 A. L. R. 540.

The evidence discloses that Cecil Elms and his family maintained a home on the mortgaged land for a short time following the 1945 purchase. Claudine Elms left her husband and children sometime prior to June 10, 1946—the exact date is not shown—and moved to a county in eastern Arkansas. When his wife left him, Cecil Elms moved with his children to his father's adjoining farm where he has since resided and has rented

the mortgaged land to tenants. In April, 1946, Cecil and Hazel Elms sold the timber on said lands and she signed and acknowledged the timber deed as the wife of her brother. Appellee testified that at the time of the execution of the mortgage, Cecil Elms represented to him that he and his wife were divorced, but this was denied by Elms.

The determination of appellants' first contention is controlled by the case of *Johnson* v. *Commonwealth Bldg. & Loan Association,* 182 Ark. 226, 31 S. W. 2d 136. There Johnson executed a mortgage on his home to the building and loan association on July 30, 1926, representing that he was an unmarried man when in fact he was married, but was separated from his wife who did not join in the execution of the mortgage. On January 29, 1927, Johnson's wife obtained a decree of divorce in which her husband failed to appear and the decree recited that property and alimony rights had been settled. The parties were remarried on October 10, 1927, and other conveyances were made of the property. In a suit by the loan association to foreclose its mortgage, it was held that Johnson, having conveyed the homestead on the representation that he was single, was estopped to claim otherwise. It was also held that the divorce decree obtained by Johnson's wife divested her of homestead rights in the property, the court saying: "The effect of this decree of divorce was to divest Mrs. Johnson of all dower and homestead rights so that then and thereafter H. M. Johnson was the owner as if he had always been a single person. See *Taylor* v. *Taylor,* 153 Ark. 206, 240 S. W. 6; *Moore* v. *Warren,* 160 Ark. 629-630, 255 S. W. 306; *Oliver* v. *Howie,* 170 Ark. 763, 281 S. W. 17." In *Moore* v. *Warren, supra,* the court said: "The wife's right of homestead is as dependent upon the marital relationship as her dower interest. Both rights cease after the divorce is granted."

In *Biddle* v. *Biddle,* 206 Ark. 623, 177 S. W. 2d 32, Justice Knox, speaking for the court, said: "It is well settled that in the absence of statutory provisions to the contrary the wife has no homestead rights in the husband's property after a divorce unless the right thereto

is reserved to her by the decree, and it makes no difference in this regard whether the decree was obtained by the husband or by the wife. 29 C. J. (Homestead), p. 934, § 347; 17 Am. Jurisprudence (Divorce), § 642, p. 491; 27 C. J. Secundum (Divorce), § 294, p. 1123. The reason for the rule as stated in Am. Jurisprudence, *supra,* is that 'On divorce the wife ceases to be a member of the family to the same extent as if she were dead and thereby loses claim on or right to the same as a homestead.' "

The preponderance of the evidence supports the chancellor's finding that Cecil Elms misrepresented his marital status when he executed the mortgage to appellee and he is thereby estopped to claim the invalidity of the mortgage. This misrepresentation would not operate as an estoppel against his wife, Claudine, even though she had deserted her family. *Mason* v. *Dierks Lumber & Coal Co.,* 94 Ark. 107, 125 S. W. 656, 26 L. R. A., N. S. 574. However, her homestead rights in the property were divested by the divorce decree of May 11, 1947.

It is next insisted that Hazel Elms had no real interest in the land, but was merely holding title as trustee for the minor children of her brother, Cecil Elms. There is nothing in the conveyance of the lands to Cecil and Hazel Elms to indicate the existence of a trust. The deed on its face purports to convey fee title to the lands and there was no suggestion of a trust relationship when she executed the mortgage to appellee. The bare statement of Hazel Elms that she only took title as trustee is insufficient to establish the creation of a trust as against appellee who had a right to rely on the record title and had no notice of the alleged trust relationship. We have repeatedly held that parol evidence to establish the existence of a constructive trust in lands must be full, clear and convincing. See *Tillar* v. *Henry,* 75 Ark. 446, 88 S. W. 573, and cases cited in West's Ark. Digest, Vol. 17, Trusts, § 109. The evidence in the instant case does not measure up to this rule.

It is finally contended that the note and mortgage were void for the reason that the purchase price of the truck was in excess of the ceiling price fixed by O. P. A.

regulations. An allegation to this effect was made in the answer and cross complaint of appellants which was specifically denied in appellee's reply. Although it appears from the Price Control Extension Act of 1946, Public Law 548, that price controls on nonagricultural commodities were not lifted until December 30, 1946, appellants offered no proof to establish the ceiling price of the motor truck on the date of purchase from appellee. Appellants rely on the cases of *Scott Furniture Co.* v. *Maurer,* 208 Ark. 604, 187 S. W. 2d 185, and *Gale & Co.* v. *Wallace,* 210 Ark. 161, 194 S. W. 2d 881, but in those cases the ceiling price of the commodity involved was clearly established by competent proof.

It is suggested that we should take judicial notice of the O. P. A. ceiling price of a 1945 model truck on June 10, 1946. As a general rule, state courts take judicial notice of the rules and regulations of well known federal administrative bodies. 31 C. J. S., Evidence, § 39. However, it has been held that a state court will not take judicial notice of rulings and orders of federal agencies when relied upon to defeat an otherwise valid instrument. *Evans* v. *Sheriden,* 28 Tenn. App. 90, 186 S. W. 2d 911, *certiorari* denied 325 U. S. 877, 65 S. Ct. 1557, 89 L. Ed. 1994. Regulations governing the price of motor vehicles under the federal Emergency Price Control Act are no longer in existence. Such matters are no longer well or commonly known, so there is lacking that notoriety which furnishes the fundamental basis upon which the rule of judicial notice rests. Moreover, we held in *Arrington* v. *Sam Penix Garage,* 212 Ark. 418, 206 S. W. 2d 757, that an action by the buyer against the seller for an overcharge under the federal price control act must be brought within one year from the sale date under Title 50, U. S. C. A., § 925(e).

The decree is affirmed.