2005 ND 175

**Lyle SEEHAFER, Plaintiff and Appellant**

v.

**Janice SEEHAFER, Defendant and Appellee.**

No. 20050069.

Supreme Court of North Dakota.

Oct. 18, 2005.

Michael S. McIntee of McIntee Law Firm, Towner, N.D., for plaintiff and appellant.

Ted D. Seibel of Ted D. Seibel, P.C., and Maryha Fasching, third-year law student (argued), Harvey, N.D., for defendant and appellee.

MARING, Justice.

[¶ 1] Lyle Seehafer appeals from a judgment granting his former sister-in-law, Janice Seehafer, a probate homestead on land owned by Lyle and his brother Arlo in joint tenancy. The trial court awarded Janice damages after finding Lyle caused her to involuntarily leave the homestead property.

[¶ 2] We conclude a probate homestead may not be created when the claimant has never held any interest in the property on which the homestead is sought to be imposed, and the interest of the claimant's deceased spouse was never more than a joint tenancy; an interest which, by opera-

tion of law, terminates at death and vests solely in the surviving joint tenant. Accordingly, we reverse.

## I

[¶3] In 1971, Viola Seehafer deeded the family farm, located in McHenry County, to her sons Lyle and Arlo in joint tenancy. The brothers had lived on the property, with their mother, all their lives and had farmed it together since their father's death in 1957. In about 1960, the brothers formed a partnership for the purpose of carrying on the farming business. In 1989, the brothers purchased another tract of land, located across the road from the family farm, again taking the property in joint tenancy.

[¶4] In 1994, Arlo married Janice. Arlo and Janice subsequently moved into a trailer home on the Seehafer property. Lyle and his mother continued to live in the family house. Janice eventually took over housekeeping chores for both brothers and their mother. Groceries and utilities for both the farm house and trailer home were paid with partnership assets. After the brothers' mother entered a nursing home in 1996, Janice's services for Lyle were reduced, with her primarily providing him only a noon meal.

[¶5] In January 2000, Arlo died unexpectedly. Janice became the personal representative for Arlo's estate. She and Lyle, soon after, orally agreed Janice would do yard work and continue to provide the noon meal, and Lyle would continue to provide electricity and propane for the trailer home. In April 2000, three months after Arlo's death, Lyle and Janice also entered into an agreement for Lyle to purchase Arlo's share of the partnership's machinery and cattle from Janice.

[¶6] Although some conflict had arisen between Lyle and Janice before Arlo's death, including arguments over flowers, feeding dogs at the table, and smoking in the house, relations between the two began to deteriorate more rapidly following a February 2001 incident involving a milk check made out to Seehafer Farms. Although the check was eventually split between the parties, this incident led to Janice's initial claim that she was entitled to a homestead interest. This claim was contained in a letter Janice's attorney wrote to Lyle.

[¶7] In March or April 2001, Janice stopped cooking a noon meal for Lyle for reasons the parties contest. On Memorial Day of 2001, the two had a disagreement about going fishing. During the summer of 2001, Janice and Lyle had an ongoing disagreement about two of Arlo's guns that Lyle considered family heirlooms. Janice wanted to sell the guns at an auction, and Lyle felt the guns should go to a nephew who was a gun collector. Lyle initially sold the guns to the nephew, giving Janice the proceeds, but later recovered them, at Janice's request, so she could sell them at an auction. At some point during this disagreement over the guns, near the end of August, Lyle told Janice he wanted her to move her trailer home from the property and leave.

[¶8] An August 27, 2001, letter from Janice's attorney to Lyle stated Janice had decided to move and that she was looking for property where she could relocate her trailer home. From approximately September 23 until October 14, 2001, Janice was on vacation and away from the property. When she returned, Lyle shut off her water for a portion of one afternoon. At some point, an advertisement for land from the local paper was posted on Janice's door. The parties contest whether Lyle posted it. A deed, conveying property in Drake, North Dakota, to Janice was signed October 15, 2001, and Janice moved her trailer home and the garage in November 2001. The parties contest when Janice

made her decision to finally move from the property.

[¶ 9] On February 25, 2002, Janice filed a Declaration of Homestead under N.D.C.C. ch. 47–18 declaring she held a probate homestead on part of the Seehafer property. Subsequently, she sent a letter to Lyle demanding an accounting. Lyle commenced an action to remove the cloud on his title created by Janice's filing. Janice moved for partial summary judgment and counterclaimed requesting a determination of her homestead rights, one-half the farm income, and damages for moving expenses. The trial court denied Janice's motion for partial summary judgment.

[¶ 10] Following a bench trial, the trial court found that Janice was entitled to a homestead allowance and had involuntarily left the Seehafer property. The trial court awarded her $35,878 for the value of the homestead, $2,689 in reasonable rental value for the land, and $5,676.54 in moving expenses. Lyle appeals raising several issues.

## II

[¶ 11] Although the parties raise a number of issues on appeal, the dispositive issue is whether a probate homestead may be imposed on land held by the claimant's deceased spouse in joint tenancy with another. Lyle argues the trial court erred when it determined Janice could impose a homestead claim on Lyle's interest in the property. Janice argues a probate homestead may be established by one whose husband held a joint tenancy interest in the property before his death.

[¶ 12] This is an issue of first impression in North Dakota and requires us to interpret the meaning of our probate homestead statutes under N.D.C.C. ch. 30–16. The interpretation of a statute is a question of law, subject to full review on appeal. *GO Comm. v. City of Minot*, 2005 ND 136, ¶ 9, 701 N.W.2d 865.

[¶ 13] Although an issue of first impression in North Dakota, we note that Florida, South Dakota, and Oklahoma have previously considered similar cases. All have determined that a spouse cannot assert a probate homestead on property he or she held no interest in and which his or her now-deceased spouse had held only as a joint tenant. *See Ostyn v. Olympic*, 455 So.2d 1137 (Fla.App.1984); *Gross v. Gross*, 491 N.W.2d 751 (S.D.1992); *Casey v. Casey*, 109 P.3d 345 (Okla.2005). Furthermore, as a general matter:

> [Probate homestead] provisions presuppose not only that the decedent had a homestead at the time of death, but that the property interest of the decedent did not terminate at death. Consequently, it has been held that the survivor is not entitled to a homestead which the decedent had established in property which he held for life, or as a tenant at will, or during occupancy. On the other hand, such statutes do not require that the decedent have had a fee simple interest, and the survivor may accordingly succeed to a homestead established in leasehold property. However, the survivor's rights cannot be of longer duration than the estate owned by the decedent, and the expiration of that estate will terminate the survivor's interest.

*American Law of Property* § 5.116 (1952).

[¶ 14] Janice relies on several cases from other jurisdictions and miscellaneous authorities to support her argument she is entitled to a homestead, including *Elms v. Hall*, 214 Ark. 601, 215 S.W.2d 1021 (1948); *Watson v. Peyton*, 10 Cal.2d 156, 73 P.2d 906 (1937); *Cooper Co. v. Werner*, 111 S.W.2d 823 (Tex.Ct.App.1937); and *Joint Tenants, Estate or Interest in Real Property to Which a Homestead Claim May Attach*, W.W. Allen, 74 A.L.R.2d 1355 (1960). These cases and the Allen article are not applicable to this case. At the outset, the Allen article states it does not

cover the situation presented here. 74 A.L.R.2d at 1358 ("The right of one spouse to claim a homestead in property of the other where the claimant has no interest in the property independently of the homestead statute is not within the annotation."). In *Cooper Co.*, the Texas Supreme Court states that one possessing a joint tenancy interest may sustain a homestead interest against creditors but not to the prejudice of co-tenants. 111 S.W.2d at 826. The *Elms* case is also not applicable as it relates to a homestead interest claimed by a joint tenant against a creditor, not the spouse of a joint tenant against the surviving joint tenant. 215 S.W.2d 1021.

[¶ 15] In *Watson*, the joint tenants were husband and wife. 73 P.2d 906. The court held the wife alone, or the husband and wife together, could make a valid declaration of homestead upon the property held in joint tenancy. *Watson*, 73 P.2d at 907. The case is silent, however, as to whether a spouse who holds no interest in property can claim a homestead in her husband's joint estate property after his death. This is the question we are concerned with in this case.

### III

[¶ 16] "Homestead laws are a uniquely American institution, having their origins in the great debtor revolution of the era of 'Jacksonian Democracy.'" 40 C.J.S. *Homesteads* § 3 (1991). Homestead rights "exist only by virtue of constitutional and statutory provisions creating them, and are extended or limited by the provisions creating them." *Id.* "In the law, the term 'homestead' embraces a variety of conceptions and has different meanings when applied to different factual situations." 40 Am.Jur.2d *Homestead* § 1 (1999). "The extent of protection and purpose behind the numerous state provisions varies enormously." 2 Richard R. Powell, *Powell on Real Property, Homesteads*

§ 18.03[1], at 18–63 (Michael Allan Wolf ed., 2005). "[T]he primary purpose of the homestead provision is to place the property designated as a homestead out of reach of creditors while it is occupied as a home or, as otherwise stated, to secure to a debtor and his family necessary shelter from creditors." 40 Am.Jur.2d *Homestead* § 4 (1999). "Although the law creating the homestead right is to be construed liberally in the debtor's favor, it should not be so applied as to make it an instrument for the accomplishment of fraud or imposition." *Id.* at § 12. With these general rules in mind, we consider North Dakota's statutes and constitution. *See id.* at § 2 ("Homestead rights did not exist under the common law. They are, it seems, peculiar to America, and exist by virtue of statute or constitutional provision.").

[¶ 17] The North Dakota Constitution provides for the protection of a homestead for debtors, but says nothing about the probate homestead right:

The right of the debtor to enjoy the comforts and necessaries of life shall be recognized by wholesome laws, exempting from forced sale to all heads of families a homestead, the value of which shall be limited and defined by law; and a reasonable amount of personal property; the kind and value shall be fixed by law. This section shall not be construed to prevent liens against the homestead for labor done and materials furnished in the improvement thereof, in such manner as may be prescribed by law.

N.D. Const. art. XI, § 22. Our statute providing for a probate homestead provides, in relevant part:

Upon the death of a person in whom the title to real property constituting a homestead is vested, a homestead estate shall survive, and, until otherwise disposed of according to law, shall be set over to the persons and in the order following:

1. To the surviving spouse for life or until the surviving spouse again marries.

N.D.C.C. § 30–16–02.

[¶ 18] Janice does not claim she ever held an interest in the property in question beyond that of her purported probate homestead. Under N.D.C.C. § 30–16–02, the validity of Janice's probate homestead claim then hinges largely on whether the title to the property on which she wishes to establish her claim had vested in her husband.

[¶ 19] "Words used in any statute are to be understood in their ordinary sense, unless a contrary intention plainly appears, but any words explained in this code are to be understood as thus explained." N.D.C.C. § 1–02–02. "Vested," in its ordinary sense, is defined: "That has become a completed, consummated right for present or future enjoyment; not contingent; unconditional; absolute." Black's Law Dictionary 1557 (7th ed.1999). Regarding the property interest vested in a joint tenant, we have said:

> A joint tenancy may be described as a life estate with each joint tenant having a contingent remainder in fee, the contingency being based upon survival of the other joint tenant or tenants....
>
> ....
>
> The surviving joint tenant does not take the interest of the deceased joint tenant; rather, the contingent remainder vests in the survivor because the contingency (survival of the cotenant) has been met.

*Jamestown Terminal Elevator, Inc. v. Knopp*, 246 N.W.2d 612, 613–14 (N.D. 1976). In *Jamestown Terminal Elevator, Inc.*, we went on to say:

> The interest of two joint tenants is not only equal or similar, but also is one and the same. One has not originally a distinct moiety from the other; but, if by

any subsequent act (as by alienation or forfeiture of either) the interest becomes separate and distinct, the joint tenancy instantly ceases. But, while it continues, each of two joint tenants has a concurrent interest in the whole; and therefore, on the death of his companion, the sole interest in the whole remains to the survivor. For the interest, which the survivor originally had, is clearly not devested by the death of his companion; and no other person can now claim to have a *joint* estate with him, for no one can now have an interest in the whole, accruing by the same title, and taking effect at the same time as his own; neither can anyone claim a *separate* interest in any part of the tenements, for that would be to deprive the survivor of the right which he has in all, and every part. As, therefore, the survivor's original interest in the whole still remains; and as no one can now be admitted, either jointly or severally, to any share with him therein, it follows that his own interest must now be entire and several and that he shall alone be entitled to the whole estate (whatever it be) that was created by the original grant. 2 W. Blackstone, Commentaries 184–85.

246 N.W.2d at 613–14. This means, in a joint tenancy, nothing beyond a life estate can be said to be vested in a joint tenant until he or she is the only remaining survivor. So long as another joint tenant survives, the entire interest of a deceased joint tenant is terminated at his death. The deceased joint tenant is divested of his interest and no interest remains.

[¶ 20] Under our statute, a homestead estate survives only "[u]pon the death of a person in whom the title to real property constituting a homestead is vested." N.D.C.C. § 30–16–02. In this case, Janice's right to claim the probate homestead arises only upon the death of Arlo. At his death, any interest Arlo holds in the joint

tenancy is divested. *See Jamestown Terminal Elevator, Inc.,* 246 N.W.2d at 613–14. There is no longer an interest to which a homestead claim may attach. *See State ex rel. Board of Univ. & Sch. Lands v. Bladow,* 462 N.W.2d 453, 455 n. 1 (N.D. 1990); *Myrick v. Bill,* 3 Dakota 292, 17 N.W. 268, 271 (Dak.1883) ("[T]he rule seems to be well settled that while a very limited estate in the land, perhaps a mere leasehold interest, may be sufficient to support a claim of homestead, some estate in the land is essential."). Without a property interest on which to attach a probate homestead, Janice's claim must fail.

[¶ 21] Our statute provides that the probate homestead is to exist "until otherwise disposed of according to law." N.D.C.C. § 30–16–02. As we stated in *Jamestown Terminal Elevator, Inc.,* upon the death of a joint tenant, property held in joint tenancy is immediately vested in the surviving joint tenant. 246 N.W.2d at 613–14. In other words, it is otherwise disposed of according to law. As the South Dakota Supreme Court explained: "The homestead exemption is temporary and exists only so long as the conditions prevail under which it was allowed by the homestead law." *Gross v. Gross,* 491 N.W.2d 751, 754 (S.D.1992) (citation omitted) (holding, under a similar statute, ownership of property was transferred to surviving joint tenants upon the death of the joint tenant by operation of law, thus defeating the homestead claim of deceased's spouse).

> While the law clearly protects the surviving spouse's homestead right to possession and occupation from disposition to other heirs and/or beneficiaries via probate administration proceedings [it does not] provide similar protection of the homestead right as against disposition to true owners by operation of law.

*Casey v. Casey,* 109 P.3d 345, 350 (Okla. 2005).

[¶ 22] Homestead protections have "been said to be based on the homestead claimant's rights in the property and to have no separate existence independent of those rights, so that the homestead right in property can never rise any higher than the right, title, or interest that the claimant owns in the property." 40 Am.Jur.2d *Homestead* § 3; *see also,* 2–18 *Powell on Real Property* § 18.03[5], 18–95 ("[T]he exemption from attachment, judgment, levy or execution sale is designed to protect the debtor against third party creditors and it may not provide relief against joint tenants of or tenants in common with the homestead claimant.").

[¶ 23] North Dakota has long recognized that a homestead is limited by the extent of the claimant's or the spouse's property interest. In *Ferris v. Jensen,* this Court said a wife holding no interest in land cannot claim a homestead right greater than the equitable title her husband held under a contract for purchase:

> The existence of such homestead right was entirely dependent upon her husband's equitable title under said contract. Like a stream, it could rise no higher than its source. The homestead right ceased with the extinguishment of her husband's equitable estate in the land, and such equitable estate was extinguished by abandonment of the contract.

16 N.D. 462, 114 N.W. 372, 375 (1907). Here, Arlo's interest was terminated upon his death and there is no interest remaining in which Janice may create a homestead.

[¶ 24] Although Janice argues we should expand our interpretation of N.D.C.C. § 30–16–02 in the interest of furthering the public policy goals of the homestead exemption, "[w]hen the wording of a statute is clear and free of all ambiguity, the letter of it is not to be

disregarded under the pretext of pursuing its spirit." N.D.C.C. § 1–02–05. If the legislature wishes to make property held in joint tenancy subject to a probate homestead right, it can do so by amending the statutes.

## IV

[¶ 25] The intent of our probate homestead is the protection of the family from creditors and from the improvident devising, by a spouse or parent, of the family home. The intent is not to impose upon the fee simple owner, who until recently has also claimed the property as his home, the burden of another's life estate. This should be particularly true in a case in which the homestead is claimed only after any interest upon which the homestead might validly be claimed has been terminated.

[¶ 26] We hold that the trial court erred in concluding Janice could claim a probate homestead on Lyle Seehafer's property by virtue of her husband's prior joint tenancy interest. The spouse of a deceased joint tenant cannot claim a probate homestead on her husband's property when his interest in that property terminated on his death and she held no interest of her own in the property.

[¶ 27] Our decision on this issue renders moot the further issues raised by the parties in regard to the abandonment and damages issues and we do not consider them. The judgment of the trial court is reversed and title to the property is vested solely in Lyle Seehafer.

[¶ 28] GERALD W. VANDE WALLE, C.J., DANIEL J. CROTHERS, DALE V. SANDSTROM, and CAROL RONNING KAPSNER, JJ., concur.