2013 ND 153

**Kevin PIFER, Plaintiff and Appellee**

v.

**Barbara McDERMOTT, Defendant and Appellant.**

**No. 20130027.**

Supreme Court of North Dakota.

Aug. 29, 2013.

Roger J. Minch, Fargo, N.D., for plaintiff and appellee.

DeWayne A. Johnston (argued) and Jacey L. Johnston (appeared), Grand Forks, N.D., for defendant and appellant.

CROTHERS, Justice.

[¶ 1] Barbara McDermott appeals from a judgment entered on a jury verdict awarding Kevin Pifer $80,957.07 in damages for unlawful interference with business, and from several other orders issued by the district court in connection with these proceedings. We conclude the court

did not err in ruling as a matter of law that the purchase option given to Pifer by her mother, Dorothy Bevan, was a valid and enforceable gift. We also conclude the interference with business claim was properly presented to the jury, the evidence supports the jury verdict and the court did not abuse its discretion in its related rulings and orders. We affirm.

I

[¶ 2] Pifer, who lived in Fargo, and Bevan, who lived in Larimore, were distant relatives. In January 2001, Bevan was in her mid–80s and executed a durable power of attorney in favor of Pifer. Pifer assisted Bevan with managing her farmland and with performing other miscellaneous tasks at her home. On February 16, 2004, Bevan executed a "PURCHASE OPTION" relating to two quarter sections of Grand Forks County agricultural property:

"DOROTHY BEVAN gives KEVIN PIFER an exclusive option to purchase the described property for the sum of $107,569.00.

"This option may be exercised by KEVIN PIFER at any time within two years following OWNER's death. This does not preclude OWNER from selling the property to KEVIN PIFER during OWNER's lifetime. The option shall automatically expire after two years following OWNER's death, unless KEVIN PIFER shall file with the County Recorder within such two-year period, notice of his intent to exercise this option.

"Conveyance shall be by warranty deed, or deed of personal representative, if applicable.

"This agreement is binding upon the parties, their heirs and estates, and successors."

The purchase option price was less than the fair market value of the property at that time. Bevan's attorney drafted the agreement. Pifer recorded the purchase option in Grand Forks County on February 18, 2004.

[¶ 3] Bevan suffered a "slight stroke" in July 2008. McDermott visited Bevan shortly thereafter. This was McDermott's third visit with her mother in North Dakota since McDermott left the family home in 1971. McDermott returned to North Dakota in October 2008 and took Bevan to an attorney who prepared a power of attorney in favor of McDermott. Bevan executed the document, McDermott removed Bevan from a nursing facility in Larimore and McDermott took Bevan to Kentucky to live with her.

[¶ 4] On October 22, 2009, Bevan executed a warranty deed creating a joint tenancy with the right of survivorship with McDermott in the property covered by the purchase option. This warranty deed was recorded in Grand Forks County on December 22, 2009. Bevan died in Kentucky on June 24, 2010, at the age of 95. McDermott is Bevan's sole surviving heir.

[¶ 5] On July 27, 2010, Pifer recorded in Grand Forks County a notice of intent to exercise the purchase option. On July 28, 2010, an affidavit of survivorship was recorded indicating McDermott was the sole surviving joint tenant of the property. On September 8, 2010, Pifer's attorney sent a letter to McDermott's attorney along with a cashier's check for $107,569 to exercise the option. McDermott refused to honor the option and returned the check.

[¶ 6] In September 2010, Pifer brought this action against McDermott seeking declaratory relief, specific performance of the option and damages for intentional interference with economic advantage. McDermott counterclaimed, alleging the purchase option was void for lack of consideration or voidable because its terms were uncon-

scionable. She also claimed Pifer, acting through the power of attorney, obtained the option through undue influence, coercion and fraud. McDermott moved for summary judgment, arguing the option was invalid. Pifer also moved for summary judgment, arguing the option was valid and enforceable. The district court agreed with Pifer and entered a partial summary judgment ordering McDermott to comply with the purchase option agreement. Pifer's claim for damages for interference with economic advantage remained pending a jury trial, and the court entered a N.D.R.Civ.P. 54(b) order for purposes of appeal. In *Pifer v. McDermott*, 2012 ND 90, ¶ 1, 816 N.W.2d 88, we dismissed McDermott's appeal from the partial summary judgment, concluding the court abused its discretion in directing entry of a final judgment under N.D.R.Civ.P. 54(b).

[¶ 7] After we issued our decision, the district court granted a temporary injunction on May 25, 2012, enjoining McDermott from farming the property during the 2012 crop year unless she deposited with the court $27,300 she was to receive under a cash rent lease of the property. She deposited the proceeds from the lease agreement with the court. Following a jury trial in November 2012, the jury found in favor of Pifer on his tort claim and awarded him $80,957.07 in damages. On December 31, 2012, the court continued the May 2012 temporary injunction enjoining McDermott from farming the property. The court allowed Pifer to cash rent the property for the 2013 crop year but required that he deposit the proceeds with the court. Pifer deposited with the court the $48,855 in proceeds from the lease. On January 17, 2013, the court denied McDermott's motion for judgment notwithstanding the jury verdict under N.D.R.Civ.P. 50 and granted her motion for a stay pending appeal.

## II

[¶ 8] McDermott argues the district court erred in granting partial summary judgment ruling the purchase option was valid and enforceable as a matter of law.

[¶ 9] Our standard for reviewing summary judgments is well-established:

"Summary judgment is a procedural device used to promptly resolve a controversy on the merits without a trial if either party is entitled to judgment as a matter of law and the material facts are undisputed or if resolving the disputed facts would not alter the result. " 'Summary judgment is inappropriate if neither party is entitled to judgment as a matter of law or if reasonable differences of opinion exist as to the inferences to be drawn from the undisputed facts.' " Whether a district court has properly granted a motion for summary judgment is a question of law, which this Court reviews de novo on the record.

"When we review a district court's decision on a motion for summary judgment, we view the evidence in a light most favorable to the party opposing the motion and give the opposing party all favorable inferences. In determining whether summary judgment is appropriate, the court may examine the pleadings, depositions, admissions, affidavits, interrogatories, and inferences to be drawn from the evidence. The moving party must show there are no genuine issues of material fact and the case is appropriate for judgment as a matter of law. A party resisting the motion for summary judgment 'cannot merely rely on the pleadings or other unsupported conclusory allegations, but must present competent admissible evidence by affidavit or other comparable means which raises an issue of material fact.' "

*Riedlinger v. Steam Bros., Inc.,* 2013 ND 14, ¶ 10, 826 N.W.2d 340 (quoting *Burris Carpet Plus, Inc. v. Burris,* 2010 ND 118, ¶¶ 10–11, 785 N.W.2d 164).

### A

[¶ 10]  McDermott argues the purchase option was not valid or enforceable because Pifer gave no consideration for the agreement and an option to purchase property does not meet the legal requirements for a "valid inter vivos gift."

[¶ 11]  This Court recognizes that a person may give an option to purchase real property.  If no consideration is given for an option to purchase real property, the option "may be withdrawn at any time before acceptance." *Dole v. Hansen,* 238 N.W.2d 58, 61 (N.D.1975); *see also* 14 R. Powell & M. Wolf, *Powell on Real Property* § 81.01[2][b], at 81–11 (2013) ("If the option is given gratuitously, without payment or other consideration from the prospective purchaser, the 'option' constitutes merely an offer to sell that the seller can withdraw at any time." (footnote omitted)); III *American Law of Property* § 11.17, at 47 (1952) ("If given gratuitously, [an option] amounts merely to an offer and may be withdrawn at any time prior to acceptance." (footnote omitted)); *cf. Schulz v. Saeman,* 150 N.W.2d 67 Syll. 1 (N.D. 1967) ("Generally, an option to purchase property of the estate, at book value or appraised value, or at a price named, may be created by a will."); 4 H. Tiffany, *Law of Real Property* § 1097, at 561 (3d ed. 1975) ("An option to purchase property of the estate may be created by will. . . ."). An option to purchase real property given without consideration is valid and enforceable if "the option agreement was unconditionally accepted within the time prescribed therein and no attempt was made to withdraw it before acceptance." *Alfson v. Anderson,* 78 N.W.2d 693, 698 (N.D. 1956).

[¶ 12]  McDermott does not argue that the purchase option was withdrawn, and we have not found any indication in the record that either Bevan or McDermott formally or informally withdrew the option prior to Pifer's attempt to exercise the option.  *See Dole,* 238 N.W.2d at 60 (optioners "served notice on [optionees] that any option granted under the original agreement was withdrawn and that the contract was without consideration and unenforceable").  Bevan's creation of a joint tenancy in the property with McDermott in 2009 cannot be considered evidence of withdrawal of the purchase option because the 2004 agreement specifically contemplated transfers of interests in the property by stating the agreement was "binding upon the parties, their heirs and estates, and successors."  Nor can Bevan's death be considered evidence of a withdrawal of the option because the agreement allowed Pifer to exercise the option "at any time within two years following OWNER's death."

[¶ 13]  McDermott argues she cannot be considered a "successor[ ]" because of the nature of a joint tenancy with the right of survivorship.  She relies on a series of cases exemplified by *Seehafer v. Seehafer,* stating that, upon the death of a joint tenant, "[t]he surviving joint tenant does not take the interest of the deceased joint tenant; rather, the contingent remainder vests in the survivor because the contingency (survival of the cotenant) has been met."  2005 ND 175, ¶ 19, 704 N.W.2d 841 (quoting *Jamestown Terminal Elevator, Inc. v. Knopp,* 246 N.W.2d 612, 613–14 (N.D.1976)).  McDermott's argument erroneously focuses upon Bevan's death rather than Bevan's creation of the joint tenancy.  The 2009 warranty deed provided that Bevan, "for and in consideration of the sum of One Dollar and other

good and valuable consideration, ... does hereby GRANT to the Grantees AS JOINT TENANTS WITH RIGHT OF SURVIVORSHIP AND NOT AS TENANTS IN COMMON, all of the following real property ...." A "successor" is broadly defined as "[o]ne that succeeds or follows." *Black's Law Dictionary* 1431 (6th ed.1990). When Bevan transferred her interest in the property to herself and McDermott as joint tenants in 2009, McDermott became a "successor[ ]" to Bevan's fee simple interest in the property under the commonly understood meaning of the term.

[¶ 14] In *Horgan v. Russell*, 24 N.D. 490, 491–92, 140 N.W. 99, 100 Syll. 5 (1913), this Court explained:

"Upon acceptance in accordance with the terms of an option to purchase real estate, where the land covered thereby has been, pending acceptance and during the period stipulated within which acceptance might be made, transferred to a third party, with full notice of such option outstanding and unaccepted, the same may be accepted by notice of acceptance served upon the optionor, the owner, giving the option, and thereupon the rights of the acceptor, optionee, relate back to and attach as of the date of the option, and render the intervening rights acquired with notice subject to all rights of the option purchaser."

*See also Nodland v. Plainsmen Petroleum, Inc.*, 265 N.W.2d 252, 255–56 (N.D. 1978) ("A properly recorded option creates valuable contract rights which courts will protect."); 92 C.J.S. *Vendor and Purchaser* § 179, at 156 (2010) ("[T]here is also authority that acceptance of an option and performance of the conditions entitled the holder of the option to call for performance as of the date of giving the option, so as to cut off intervening rights acquired with knowledge of the existence of the option.")

(footnotes omitted). Although *Horgan* involved a purchased option, we see no reason to treat a gratuitous option differently when it has not been withdrawn prior to acceptance.

▪ [¶ 15] "Notice may be either actual or constructive." *Vanderhoof v. Gravel Prods., Inc.*, 404 N.W.2d 485, 488 (N.D.1987); *see also* N.D.C.C. § 1–01–22. "The record of any instrument shall be notice of the contents of the instrument, as it appears of record, as to all persons." N.D.C.C. § 47–19–19. The purchase option was recorded in 2004, before Bevan transferred the property to herself and McDermott as joint tenants. Consequently, McDermott is charged with notice of the purchase option, *see, e.g., Bakken v. Duchscher*, 2013 ND 33, ¶ 15, 827 N.W.2d 17, and she received her interest in the property subject to the option.

### B

▪ [¶ 16] McDermott argues the district court erred in granting summary judgment and ruling the purchase option was a valid gift and enforceable because donative intent is a question of fact.

[¶ 17] The district court relied on affidavits and deposition testimony of several persons when granting Pifer summary judgment. The attorney who prepared the purchase option for Bevan said Bevan expressly requested that Pifer have an option to purchase the property and set the price herself. The attorney said Bevan was of sound mind and he did not view the transaction as unusual given Bevan's strained relationship with McDermott and her good relationship with Pifer and his family at the time. The attorney described Bevan's relationship with Pifer as akin to a "mother/son" relationship. The attorney said he had no contact with Pifer before the purchase option was prepared and he saw no evidence of undue influence

or even knowledge on the part of Pifer about the terms of the option. The attorney believed Bevan intended the option to be a gift. Pifer testified he was unaware of Bevan's decision to give him the option until he was called to the attorney's office to sign the document. McDermott testified she did not notice Bevan had any cognitive impairments, even after her stroke. McDermott described Bevan's attorney, who she had not met until 2008, as a "liar" and his testimony as "malarkey." McDermott also testified, "My mother would never have gone to [the attorney's] office alone with the idea to sell Kevin Pifer anything. She was so angry with him."

[¶ 18] The district court reasoned:

"After reviewing all matters of record in this matter, the trial court determines that there is no genuine issue of material fact with regard to the mental capacity and intent of Mrs. Dorothy Bevan on February 16, 2004 when she executed the Purchase Option Agreement with Plaintiff Kevin Pifer. The Defendant has relied upon mere unsubstantiated allegations which have fallen far short of showing the existence of a genuine issue of material fact relative to her mother's mental capacity or donative intent on February 16, 2004. Further, the Defendant has failed to present any competent evidence, by affidavit or otherwise, to even barely support her assertions that Mr. Pifer conducted himself in a self-dealing, coercive or otherwise dishonest manner in conjunction with Mrs. Bevan's decision to give him the Purchase Option in February 2004. On the contrary, the testimony that has been presented supports Plaintiff's contention that the below-market value Purchase Option was not intended by Mrs. Bevan to be contractual in nature, but rather a gift if exercised at any time between February 16, 2004 and two years after her death."

[¶ 19] On appeal, McDermott simply argues the district court erred because "donative intent must be plainly found by the fact finder (in this case, the jury)," and "[i]t was improper for the court to determine the donative intent of Dorothy, especially since there was no indication in the document that she intended the land as a gift." McDermott, however, points to nothing in the record that raises a genuine issue of material fact. We often have said courts, whether trial or appellate, have no duty to search the record for evidence that might defeat a summary judgment motion. *See, e.g., Tarnavsky v. Rankin*, 2009 ND 149, ¶ 8, 771 N.W.2d 578. Although questions involving intent are usually questions of fact inappropriate for disposition by summary judgment, *see, e.g., Riedlinger*, 2013 ND 14, ¶ 26, 826 N.W.2d 340, issues of fact for a jury may become issues of law for a court to decide if reasonable persons could not differ. *See, e.g., Lawrence v. Roberdeau*, 2003 ND 124, ¶ 10, 665 N.W.2d 719. The court did not err in ruling no genuine issue of material fact existed about Bevan's donative intent.

[¶ 20] We conclude the district court did not err in ruling the purchase option was valid and enforceable as a matter of law.

### III

[¶ 21] McDermott argues the district court erred in denying her motion for judgment as a matter of law under N.D.R.Civ.P. 50.

[¶ 22] In *In re Estate of Vestre*, 2011 ND 144, ¶ 19, 799 N.W.2d 379 (quoting *Minto Grain, LLC v. Tibert*, 2009 ND 213, ¶ 7, 776 N.W.2d 549), we explained:

"The trial court's decision on a motion brought under N.D.R.Civ.P. 50 to deny

or grant judgment as a matter of law is based upon whether the evidence, when viewed in the light most favorable to the party against whom the motion is made, leads to but one conclusion as to the verdict about which there can be no reasonable difference of opinion. In considering this motion, the trial court must apply a rigorous standard with a view toward preserving a jury verdict, and so must we in our review on appeal. In determining if the evidence is sufficient to create an issue of fact, the trial court must view the evidence in the light most favorable to the non-moving party, and must accept the truth of the evidence presented by the non-moving party and the truth of all reasonable inferences from that evidence which support the verdict. The trial court's decision on a motion for judgment as a matter of law is fully reviewable on appeal."

### A

[¶ 23] McDermott argues she is entitled to relief under N.D.R.Civ.P. 50 because Pifer's claim for unlawful interference with business was not pled in his complaint. In his complaint, Pifer captioned part of the action as "INTENTIONAL INTERFERENCE WITH ECONOMIC ADVANTAGE." In pretrial documents, however, Pifer identified this claim as "Unlawful Interference with Business." McDermott objected to this perceived "procedural defect" to no avail.

[¶ 24] A tort action for unlawful interference with business was recognized in *Trade 'N Post, L.L.C. v. World Duty Free Americas, Inc.,* 2001 ND 116, ¶ 35, 628 N.W.2d 707. This Court cited an American Law Reports annotation in doing so. That annotation explains:

"Interference with at will business relationships, which for the purpose of this annotation includes interference with ex-isting, noncontractual relationships and with business relations generally, is now a recognized tort in nearly all jurisdictions. Many different terms besides at will business relationships have been used to describe the tort, such as inducing refusal to deal, interference with reasonable expectancy or with business relations, and the term most often employed, *interference with prospective economic advantage.* However, *these terms,* although different in order to describe varying factual situations, *refer to only one tort . . . ."*

J. Pearson, Annotation, *Liability for interference with at will business relationship,* 5 A.L.R.4th 9, 16 (1981) (emphasis added) (footnotes omitted). Interference with business is synonymous with interference with economic advantage. The district court gave the pattern jury instruction requested by both parties which is based on *Trade 'N Post. See* North Dakota Pattern Jury Instruction, NDJI–Civil C–24.10. McDermott's argument is without merit.

### B

[¶ 25] McDermott argues Pifer's interference with business claim fails as a matter of law because he did not show "that a business relationship or expectancy can be formed off of a gift" and because he did not show she was a "business competitor." First, McDermott offers no authority or plausible explanation why a gift cannot form the basis of a business relationship or expectancy. Second, both parties have farmed this property and have continued to seek to do so. McDermott's suggestion that farming is not a "business" for purposes of this tort is meritless. *See, e.g., Hudson v. Cook,* 82 Ark. App. 246, 105 S.W.3d 821 (2003) (interference with business claim involving farmer); *Dykstra v. Page Holding Co.,* 766 N.W.2d 491 (S.D.2009) (same).

[¶ 26] McDermott argues the interference with business claim fails as a matter of law because Pifer did not establish an unlawful or independently tortious act. McDermott also argues the award of damages fails as a matter of law. Both of these arguments are premised on McDermott's contention that until a district court judgment is finalized by this Court, a person should not be divested of the right to the use and possession of her property. McDermott relies on *Striegel v. Dakota Hills, Inc.*, 343 N.W.2d 785 (N.D.1984), which involved an appeal from a partial summary judgment canceling a contract for deed and which was dismissed for lack of a N.D.R.Civ.P. 54(b) certification. This Court said:

> "We understand that there has been an execution on the partial summary judgment placing the campground property into the Striegels' possession. Because the judgment was not final, it was improper to execute on it. The trial court should, therefore, take whatever steps are necessary to place the parties in the same position they were prior to the improper execution."

*Striegel,* at 787. Based on *Striegel,* McDermott argues the jury could not have properly found she trespassed on Pifer's property or awarded him any damages because the underlying legal issues in this case had not been finally decided by this Court.

[¶ 27] McDermott's reasoning is flawed. Requiring a final decision by this Court on legal issues before a tort could be committed or any damages could begin to accrue would destroy "this Court's long-standing policy against piecemeal appeals." *City of Mandan v. Strata Corp.*, 2012 ND 173, ¶ 5, 819 N.W.2d 557. Indeed, one of the reasons we dismissed McDermott's prior appeal was because Pifer's claim for interference with business remained unadjudicated. *See Pifer,* 2012 ND 90, ¶ 19, 816 N.W.2d 88. Under McDermott's reasoning, a defendant could misbehave with impunity prior to final resolution of the case. Under her theory, a tort claim would not exist before entry of final judgment. To accommodate McDermott's theory, plaintiffs would be required to improperly split their causes of action. *See Hildenbrand v. Capital RV Ctr., Inc.,* 2011 ND 37, ¶ 13, 794 N.W.2d 733. McDermott's argument does not comport with any reasonable interpretation of the law.

[¶ 28] Unlike in *Striegel,* no execution on the partial summary judgment occurred in this case. The district court ordered that the cash rents received by both parties be deposited with the court in a reasonable effort to maintain the status quo until all issues between the parties were finally resolved. The court in the partial summary judgment ruled that the purchase option was valid and enforceable and, in effect, that McDermott wrongfully refused to honor it. McDermott prevented Pifer from entering the property, fenced the property and continued posting "NO TRESPASSING" signs on the property during litigation. In denying the motion, the court said:

> "Ms. McDermott argues that the November 2012 jury verdict against her should be voided as a matter of law. The trial court disagrees. This court had earlier determined that the purchase option in question between the Plaintiff and the Defendant's mother was valid. Therefore, that underlying issue was not presented to the jury for determination. Rather, the issues presented for jury consideration were whether or not Ms. McDermott's refusal to honor the purchase option resulted in any damages being sustained by the Plaintiff and, if so, the amount of such damage. After considering all relevant

evidence presented in this matter in a light most favorable to the Plaintiff, and after giving him the benefit of all reasonable inferences to be drawn from that evidence, the trial court concludes that the jury verdict rendered was justified, and that a reasonable person could only reach the same determination. Further, the court determines that the Defendant has not conclusively established that Ms. McDermott is entitled to judgment as a matter of law."

The jury's verdict is supported by the evidence.

[¶ 29] We conclude the district court did not err in denying McDermott's motion for judgment as a matter of law under N.D.R.Civ.P. 50.

### IV

[¶ 30] McDermott argues the district court erred in issuing a temporary injunction allowing Pifer to cash rent the property for the 2013 crop year.

[¶ 31] In *Eberts v. Billings Cnty. Bd. of Comm'rs*, 2005 ND 85, ¶ 8, 695 N.W.2d 691, this Court explained:

"A trial court's discretion to grant or deny a preliminary injunction is based on the following factors: (1) substantial probability of succeeding on the merits; (2) irreparable injury; (3) harm to other interested parties; and (4) effect on the public interest. *Nodak Mut. Ins. Co. v. Ward County Farm Bureau*, 2004 ND 60, ¶ 24, 676 N.W.2d 752; *Vorachek v. Citizens State Bank*, 461 N.W.2d 580, 585 (N.D.1990). The decision to grant or deny a preliminary injunction is within the discretion of a trial court, and its determination will not be disturbed on appeal absent an abuse of discretion. *Nodak Mut.*, 2004 ND 60, ¶ 24, 676 N.W.2d 752. A trial court abuses its discretion if it acts in an arbitrary, unreasonable, or unconscionable manner,

its decision is not the product of a rational mental process leading to a reasoned determination, or it misinterprets or misapplies the law. *Id.*"

[¶ 32] In the December 31, 2012 order, which is challenged on appeal, the district court maintained the status quo by enjoining McDermott from farming the property, allowing Pifer to farm the property for the 2013 crop year and ordering cash rents to be deposited with the court. The court continued a May 25, 2012 temporary injunction, reasoning:

"With regard to the first factor, this court has already made a determination that the Purchase Option in question with regard to this land is enforceable by the Plaintiff, and it continues to feel that he will prevail on this issue if the Defendant once again opts to appeal.

"With regard to the second factor, under the circumstances of this case, without ensuring that the land in question is properly farmed during the 2012 crop year, both parties suffer injury. Whether the harm is irreparable or not cannot be determined at this time, but it would appear that the higher cash rent would certainly inure to the benefit of both parties regardless of the ultimate outcome of this case."

The court found the final two factors were inapplicable.

[¶ 33] We conclude the district court did not abuse its discretion in extending the temporary injunction to cover the 2013 crop season.

### V

[¶ 34] We do not address other arguments raised because they either are unnecessary to the decision or are without merit. Pifer's request for costs and attorney fees under N.D.R.App.P. 38 is denied. The judgment and orders are affirmed.

[¶ 35]   GERALD W. VANDE WALLE, C.J., MARY MUEHLEN MARING, CAROL RONNING KAPSNER, and DALE V. SANDSTROM, JJ., concur.